1   JULIE A. TOTTEN (STATE BAR NO. 166470)
    jatotten@orrick.com
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    400 Capitol Mall
3   Suite 3000
    Sacramento, CA  95814-4497
4   Telephone:     (916) 447-9200
    Facsimile:     (916) 329-4900
5
    ALLISON E. PITIGOI (STATE BAR NO. 242211)
6   apitigoi@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
7   1000 Marsh Road
    Menlo Park, CA  94025
8   Telephone:     (650) 614-7400
    Facsimile:     (650) 614-7401
9
    Attorneys for Defendants
10  Seagate Technology LLC (erroneously sued as Seagate
    Technology, LLC) and i365 Inc. (erroneously sued as i365, Inc.)
11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15

16  PAULA HIBBS-RINES, an individual, on        Case No.  C08-05430-SI
    behalf of herself and all other similarly
17  situated, and on behalf of The State of     DEFENDANTS' NOTICE OF
    California Labor and Workforce Development   MOTION AND MOTION TO STRIKE
18  Agency as a Private Attorney General,       OR, IN THE ALTERNATIVE, FOR
                                                MORE DEFINITE STATEMENT;
19                  Plaintiff,                  MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN SUPPORT
20       v.                                     THEREOF

21  SEAGATE TECHNOLOGY, LLC, a                  [FRCP 12(E) AND (F)]
    Delaware limited liability company; I365 Inc.,
22  a California Corporation; and DOES 1        Date:  March 6, 2009
    through 10, inclusive,                      Time: 9:00 a.m.
23                                              Dept.: 10
                    Defendants.                 Judge: Hon. Susan Illston
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 2

II.   ALLEGATIONS IN FIRST AMENDED COMPLAINT ................................. 3

III.  LEGAL STANDARD........................................................................................ 4

      A.    Motion To Strike ................................................................................... 4

      B.    Motion For More Definite Statement..................................................... 5

IV.   ARGUMENT ..................................................................................................... 5

      A.    Plaintiff's Purported Class  Definitions At Paragraphs 11 Through 16 And
            Paragraph 38 And All Class Allegations Of The First Amended Complaint
            Should Be Stricken As Vague; Or, In The Alternative, Plaintiff Should Be
            Ordered to Provide A More Definite Statement ...................................... 5

      B.    Plaintiff's Expanded Purported PAGA Class Allegations Should Be
            Stricken Because Plaintiff Fails To Satisfy The Requirements Of Federal
            Rule of Civil Procedure 23................................................................... 7

            1.    Rule 23 Governs Plaintiff's Procedural Right to Proceed on Behalf
                  of Unnamed Plaintiffs ................................................................ 7

            2.    Pursuing Claims On Behalf Of Unnamed Parties Is A Procedural
                  Right Governed By Rule 23......................................................... 8

            3.    Unless The Claims Are Certified, Plaintiff Lacks Article III
                  Standing To Assert Rights Of Unnamed Current And Former
                  Employees .................................................................................. 9

            4.    Allowing Plaintiff To Proceed On Behalf Of Unnamed Parties
                  Without Compliance With Rule 23 Would Deny Due Process
                  Rights Both To The Defendants And Unnamed Parties ......................... 11

            5.    Even If The Court Applies State Law, The Court Should Not Allow
                  This Action To Proceed As A Representative Action ............................. 14

                  a.    PAGA Is Not Intended To Create A Right To A Class
                        Action Immune From The Requirements Of Class
                        Certification .................................................................... 14

                  b.    The Court Should Exercise Its Discretion And Hold That
                        Plaintiff's PAGA Claims Are Not Suitable for
                        Representative Treatment ....................................................... 16

      C.    Plaintiff's Joint Employer Allegations At Paragraphs 7 And 8 And As
            Incorporated In The First Amended Complaint Should Be Stricken As
            Overly Cursory For Failure To Plead Facts Sufficient To Allege Joint
            Employer Status ................................................................................. 19

            1.    Plaintiff Fails To Allege Facts Establishing That i365 And Seagate
                  Were Joint Employers Under California Law.......................................... 20

            2.    Plaintiff Also Fails To Allege Facts Establishing That i365 And
                  Seagate Were Joint Employers Under Federal Law ................................ 21

      D.    Plaintiff's Allegations As To Seagate Should Be Stricken On the Basis
            That Plaintiff Lacks Standing To Sue Seagate Because Seagate Was Not
            Her Employer ...................................................................................... 22

**TABLE OF CONTENTS**
(continued)

Page

E.    "Doe" Defendants Are Impertinent And Must Be Stricken.................................. 22

F.    Allegations Seeking "Disgorgement" For Plaintiff's Section 17200 Claim
      Are Improper And Should Be Stricken................................................................. 23

V.    CONCLUSION ............................................................................................................. 23

NOTICE OF MOTION AND MOTION TO STRIKE OR,
IN ALTERN., FOR MORE DEFINITE STATEMENT
CASE NO. C08-05430-SI

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Aiken v. Miller,*
  442 F. Supp. 628 (E.D. Cal. 1977) ........................................................................... 6

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................................................................ 22

*Amati v. City of Woodstock,*
  176 F.2d 952 (Ill. 1999) .......................................................................................... 12

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,*
  77 F.3d 364 (11th Cir. 1996) .................................................................................... 5

*Baird v. Kessler,*
  172 F. Supp. 2d 1305 (E.D. Cal. 2001) ................................................................. 21

*Barnett v. Washington Mutual Bank,*
  2004 U.S. Dist. LEXIS 18491 (N.D. Cal.) ....................................................... 16, 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 1959 (2007) ......................................................... 20

*Bonnette v. California Health & Welfare Agency,*
  704 F.2d 1465, 1470 (9th Cir. 1983) ..................................................................... 21

*Palmer v. Combined Ins. Co. of Am. C 1764,*
  2003 U.S. Dist. LEXIS 2534 (N.D. Ill. Aug. 29, 2003) .......................................... 4

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ........................................................................................... 8, 10

*Celador v. Int'l LTD,*
  347 F. Supp. 2d 846 (C.D. Cal. 2004) ................................................................... 11

*DFL JFM,*
  2005 U.S. Dist. LEXIS 33214 (E.D. Cal. Dec. 14, 2005) ...................................... 10

*Diaz-Ramos v. Hyundai Motor Co.,*
  504 F.3d 12 (1st Cir. 2007) ...................................................................................... 9

*Duchek v. Jacobi,*
  646 F.2d 415 (9th Cir. 1981) .................................................................................. 10

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) .................................................................................................. 6

*Feltner v. Columbia Pictures Tv,*
  523 U.S. 340 (1998) ................................................................................................ 16

# TABLE OF CONTENTS
### (continued)

Page

*Fiedler v. Clark*,
714 F.2d 77 (9th Cir. 1983)................................................................................. 10

*Flast v. Cohen*,
392 U.S. 83 (1968)................................................................................................. 22

*General Telephone Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982)................................................................................................. 8

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980)................................................................................. 22

*Hagen v. City of Winnemucca*,
108 F.R.D. 61 (D. Nev. 1985)................................................................................. 6

*Hanna v. Plumer*,
380 U.S. 460 (1965)................................................................................................. 9

*Hansberry v. Lee*,
311 U.S. 32 (1940)........................................................................................... 8, 13

*Hong Kong Supermarket v. Kizer*,
830 F.2d 1078 (9th Cir. 1987)................................................................................. 9

*Kamm v. Sugasawara*,
509 F.2d 205 (9th Cir. 1975)................................................................................. 4

*La Duke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985)................................................................................. 10

*Lora v. Providian Bancorp Servs.*,
2005 U.S. Dist. LEXIS 14795 (W.D. Tex. July 22, 2005) .................................... 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................. 9

*Mace v. Van Ru Credit Corp.*,
109 F.3d  338 (7th Cir. 1997)................................................................................. 8

*Marshall v. Standards Insur. Co.*,
214 F. Supp. 2d 1062 (C.D. Cal. 2000) ....................................... 13, 16, 17, 18, 19

*Moore v. Hughes Helicopters, Inc.*,
708 F.2d 475 (9th Cir. 1983)................................................................................. 6

*Nachum v. Allstate Ins. Co., CV 97-4493 ABC (BQRx)*,
1997 U.S. Dist. LEXIS 12670 (C.D. Cal. July 21, 1997) .................................... 13

*O'Connor v. Boeing N.A , Inc.*,
197 F.R.D. 404 (C.D. Cal. 2000) ......................................................................... 5

1

2

# TABLE OF CONTENTS
## (continued)

Page

3

*Richards v. Jefferson County, Alabama,*
517 U.S. 793 (1996) ............................................................................................................ 13

4

*Rissetto v. Plumbers & Steamfitters Local 343,*
94 F.3d 597 (9th Cir. 1996) .................................................................................................. 8

5

6

*Roberts v. Western Airlines,*
425 F. Supp. 416 (N.D. Cal. 1976) ..................................................................................... 12

7

*Rosales v. Citibank,*
133 F. Supp. 2d 1177 (N.D. Cal. 2001) ................................................................................ 4

8

9

*SEC v. Sands,*
902 F. Supp. 1149 (C.D. Cal. 1995) ..................................................................................... 4

10

*Senter v. GM Corp.,*
532 F.2d 511 (6th Cir. 1976) ................................................................................................. 5

11

12

*Sidney-Vinson v. A.H. Robins Co.,*
697 F.2d 880 (9th Cir. 1993) ................................................................................................. 4

13

*Singh v. 7-Eleven, Inc.,*
2007 U.S. Dist. LEXIS 16677 (N.D. Cal. Mar. 8, 2007) .................................................... 20

14

15

*Sosna v. Iowa,*
419 U.S. 393 (1975) ........................................................................................................... 10

16

*Summit Partnership v. Turner Broadcasting System, Inc.,*
135 F.3d 658 (9th Cir. 1998) .............................................................................................. 14

17

18

*In re Tetracycline,*
107 F.R.D. 719 (W.D. Mo. 1985) .......................................................................................... 5

19

*Torres-Lopez v. May,*
111 F.3d 633 (9th Cir. 1997) .............................................................................................. 21

20

21

*Tull v. United States,*
481 U.S. 412 (1987) ........................................................................................................... 16

22

*United States Parole Comm'n v. Geraghty,*
445 U.S. 388 (1980) ............................................................................................................. 9

23

24

*Waisbein v. UBS Fin. Services, Inc.,*
2007 U.S. LEXIS 62723 (N.D. Cal. August 15, 2007) ....................................................... 12

25

*Warth v. Seldin,*
422 U.S. 490 (1975) ...................................................................................................... 5, 22

26

27

*Wetzel v. Liberty Mutual Ins. Co.,*
508 F.2d 239 (3rd Cir. 1974) .............................................................................................. 12

28

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3  *Wilson v. Norbreck, LLC*, 2005 U.S. Dist. LEXIS 33214 (E.D. Cal. Dec. 14, 2005) ................. 10

4  **STATE CASES**

5  *Arias v. Superior Court*,
        153 Cal. App. 4th 777 (2007) ...................................................................... 10, 11

6

7  *Bronco Wine Co. v. Frank A. Logoluso Farms*,
        214 Cal. App. 3d 699 (1989)............................................................ 13, 16, 17, 18, 19

8  *Cortez v. Purolator Air Filtration Prods.*,
        23 Cal. 4th 163 (2000) ................................................................................. 23

9

10  *Dunlap v. Sup. Ct. (Bank of America)*,
         142 Cal. App. 4th 330 (2006) ...................................................................... 14, 18

11

12  *Fireside Bank v. Superior Court*,
         40 Cal. 4th 1069 (2007) .......................................................................... 11, 12, 13

13  *Home Sav. & Loan Assn. v. Sup. Ct.*,
         42 Cal. App. 3d 1006 (1974)........................................................................... 12

14

15  *In-Home Supportive Servs. v. Workers' Comp. Appeals Bd.*,
         152 Cal. App. 3d 720 (1984)........................................................................... 20

16  *Kraus v. Trinity Management Serv.*,
         23 Cal. 4th 116 (2000) ................................................................................. 16

17

18  *Michael Hat Farming Co. v. Agric. Labor Relations Bd.*,
         4 Cal. App. 4th 1037 (1992) ........................................................................... 20

19  *Rosenbluth International, Inc. v. Superior Court*,
         101 Cal. App. 4th 1073 (2002) ......................................................................... 13

20

21  *United Pub. Employees v. Pub. Employment Relations Bd.*,
         213 Cal. App. 3d 1119 (1989)........................................................................... 20

22  *Vernon v. State of California*,
         116 Cal. App. 4th 114 (2004) ........................................................................... 20

23

24  **FEDERAL STATUTES**

    Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a) ............................................... 3

25  Fed. R. Civ. P. 12(f) ......................................................................... 4, 5, 6, 7, 22, 23

26  Fed. R. Civ. P. 23(d)(4)........................................................ 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16

27  Fed. R. Civ. P. 12(f) ..................................................................................... 1, 2, 7

28

**TABLE OF CONTENTS**
**(continued)**

Page

Fed. R. Civ. P. 23 ................................................................................................................ 12

U.S. Const., art. III, § 2 ...................................................................................................... 22

**STATE STATUTES**

Cal. Lab. Code § 2698 .................................................................................................. 1, 2, 3

Cal. Lab. Code § 2699 ........................................................................................................ 9

Cal. Lab. Code § 218.5 ....................................................................................................... 3

Cal. Lab. Code § 218.6 ................................................................................................. 1, 2, 3

Cal. Lab. Code § 510 .................................................................................................... 1, 2, 3

**NOTICE OF MOTION AND MOTION TO STRIKE**

TO PLAINTIFF PAULA HIBBS-RINES AND HER COUNSEL OF RECORD AND TO ALL OTHER DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 6, 2009 at 9:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable District Court Judge Susan Illston, Courtroom 10, San Francisco Division, of the United States District Court for the Northern District of California, at 450 Golden Gate Avenue, San Francisco, California, defendants Seagate Technology LLC ("Seagate") and i365 Inc. ("i365") (collectively "Defendants") will and hereby do move to strike certain portions of the First Amended Class Action Complaint ("First Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(f) or, in the alternative, for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

Specifically, Defendants move to strike: (1) Plaintiff's purported class definitions at Paragraphs 11 through 16 and 38 and Plaintiff's class allegations as vague, imprecise and unascertainable; (2) Plaintiff's expanded purported Private Attorney General Act, California Labor Code § 2698 *et seq.* ("PAGA"), class allegations at Paragraphs 4, 5 and 38 and as incorporated into Plaintiff's sixth and seventh claims for civil penalties as improper for failure to satisfy the requirements of Federal Rule of Civil Procedure 23; (3) Plaintiff's joint employer allegations at Paragraphs 7 through 8 and as incorporated into Plaintiff's claims in the First Amended Complaint as overly cursory for failure to plead facts sufficient to allege joint employer status; (4) Plaintiff's claims against Seagate on the basis that Plaintiff lacks standing to sue Seagate because Seagate was not Plaintiff's employer; (5) Plaintiff's Doe defendant allegations at Paragraphs 3, 6, 7, 40, 54, 62, 69, 92, 97 and 104 and as incorporated in the First Amended Complaint on the basis that they are impertinent; and (6) Plaintiff's allegations seeking "disgorgement" under Plaintiff's California Business and Professions Code § 17200 claim and at Paragraph 5 of Plaintiff's prayer for relief as improper because such relief is not available under that section.  In the alternative, Defendants move for a more definite statement regarding Plaintiff's purported class definitions at Paragraphs 11 through 16 and 38 and Plaintiff's class allegations on the basis that such allegations are vague and ambiguous.

This Motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the pleadings and papers on file in this action, any matters of which the Court may or must take judicial notice, any evidence or argument presented at the hearing on the motion, and any other matters the Court deems proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Seagate Technology LLC ("Seagate") and i365 Inc. ("i365") (collectively, "Defendants"), bring this Motion to Strike portions of Plaintiff's First Amended Class Action Complaint ("First Amended Complaint" or "FAC").  Specifically, the First Amended Complaint contains numerous improper and immaterial allegations, specifically identified in the Notice of Motion and Motion filed herewith.  As discussed in more detail below, there are several categories of improper and impertinent matters that should be stricken pursuant to Federal Rule of Civil Procedure 12(f).  First, Plaintiff's purported class definitions at Paragraphs 11 through 16 and 38 and class allegations should be stricken as vague, imprecise and unascertainable.  Alternatively, the Court should order Plaintiff to provide a more definite statement regarding Plaintiff's vague and ambiguous class definitions and class allegations.  Second, Plaintiff's expanded purported Private Attorney General Act, California Labor Code § 2698 *et seq.* ("PAGA"), class allegations at Paragraphs 4, 5 and 38 and as incorporated into Plaintiff's sixth and seventh claims for civil penalties should be stricken as improper for failure to satisfy the requirements of Federal Rule of Civil Procedure 23.  Third, Plaintiff's joint employer allegations at Paragraphs 7 through 8 and as incorporated into Plaintiff's claims in the First Amended Complaint should be stricken as overly cursory for failure to plead facts sufficient to allege joint employer status under both California and federal law.  Fourth, Plaintiff's claims against Seagate should be stricken on the basis that Plaintiff lacks standing to sue Seagate because Seagate was never Plaintiff's employer.  Fifth, Plaintiff's Doe defendant allegations at Paragraphs 3, 6, 7, 40, 54, 62, 69, 92, 97 and 104 and as incorporated in the First Amended Complaint should be stricken on the basis that they are impertinent.  Lastly, Plaintiff's allegations seeking "disgorgement" under Plaintiff's California Business and Professions Code § 17200 claim and at Paragraph 5 of Plaintiff's prayer for relief

1   should be stricken as improper because such relief is not available under that section.

2   **II.      ALLEGATIONS IN FIRST AMENDED COMPLAINT**

3          Plaintiff filed a first amended complaint against Defendants alleging class action claims

4   for alleged failure to pay overtime under California Industrial Welfare Commission Order 4-100,

5   California Code of Regulations, Title 8, § 11040 and California Labor Code §§ 218.5, 218.6, 510

6   and 1194; alleged failure to provide itemized wage statements under California Labor Code §

7   226; alleged failure to properly pay overtime wages upon termination under California Labor

8   Code § 203; alleged failure to pay overtime under the Fair Labor Standards Act ("FLSA"), 29

9   U.S.C. §§ 207(a) and 216(b); alleged violations of California Business and Professions Code §

10  17200; and civil penalties for alleged overtime and Labor Code § 226(a) violations under PAGA.

11  FAC, *passim*.  Plaintiff alleges that she "was jointly employed by Defendants from April 11,

12  2005 through September 19, 2008."  FAC, ¶ 8.

13         Plaintiff allegedly brings the action on behalf of herself and all others similarly situated as

14  a Class Action pursuant to Rules 23(a), (b)(1) and (b)(3).  FAC, ¶ 11.  Plaintiff defines the

15  purported class as "all I365 Administrators who are currently employed or have been employed

16  by defendants within the State of California who at any time four (4) years prior to filing of this

17  lawsuit: (1) worked more than 8 hours in a day or 40 hours in a week without being compensated

18  at the proper premium rate,  (2) received a paycheck stub that did not accurately reflect all the

19  information required by Labor Code § 226, or (3) were willfully not paid all wages upon leaving

20  employment with Defendants."  FAC, ¶ 11.  This class is broken down into various subclasses,

21  respectively titled "California Overtime Class," "California Pay Stub Class," "California Waiting

22  Time Class" and "California Unfair Competition Class," which are discussed in further detail

23  below.  *See* FAC, ¶¶ 11-16.  Plaintiff defines the term "I365 Administrators," which is

24  incorporated into Plaintiff's class definitions, to include "anyone regardless of job title, who was

25  primarily engaged in the design installation, or configuration of computer networks; and anyone,

26  regardless of job title, who was primarily engaged in the backup and recovery of computer data."

27  FAC, ¶ 12.

28         For purposes of Plaintiff's claims under PAGA, Plaintiff further seeks to represent an

NOTICE OF MOTION AND MOTION TO STRIKE OR,
IN ALTERN., FOR MORE DEFINITE STATEMENT
CASE NO. C08-05430-SI

1  even broader purported class of employees who allegedly consist of "[a]ll current and/or former

2  I365 Administrators, Senior I365 Administrators, Disaster Recovery Network Engineers, I365

3  Managers, Senior I365 Managers, Software Engineers, Senior Software Engineers, Great Plains

4  Applications Administrators, Service Operation Engineers, Market Intelligence Interns, Sales

5  Engineers, Installation Engineers, and Technical Support Engineers."  FAC, ¶ 38.  However,

6  Plaintiff alleges that the purported PAGA class also includes "any person, regardless of job title

7  who was primarily engaged in the design, installation, or configuration of computer networks,

8  any person, regardless of job title, who was primarily engaged in the writing or testing of

9  computer software, and any person, regardless of job title who was primarily engaged in the

10 backup and recovery of computer data."  *Id*.

11 **III.    LEGAL STANDARD**

12      **A.    Motion To Strike**

13      Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any

14 pleading any . . . redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

15 "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money

16 that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."

17 *Sidney-Vinson v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1993).  A Rule 12(f) motion

18 should be granted where it is clear that the matter sought to be stricken could have no possible

19 bearing on the subject matter of the litigation.  *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1179

20 (N.D. Cal. 2001).  In deciding a Rule 12(f) motion, the court may consider the pleading under

21 attack and matters upon which the court may take judicial notice.  *SEC v. Sands*, 902 F. Supp.

22 1149, 1165 (C.D. Cal. 1995) (citation omitted).

23      Class allegations may also be stricken at the pleading stage.  *See, e.g., Kamm v.*

24 *Sugasawara*, 509 F.2d 205, 212 (9th Cir. 1975) (district court properly granted motion to dismiss

25 and strike class allegations under Rule 23(d)(4)); *Palmer v. Combined Ins. Co. of Am*., No. 02 C

26 1764, 2003 U.S. Dist. LEXIS 2534, at *5 (N.D. Ill. Aug. 29, 2003) ("[I]t is sometimes possible to

27 determine from the pleadings alone [the Rule 23] requirements cannot possibly be met, and in

28 such cases, striking class allegations before commencing discovery is appropriate.").  In this

1   regard, Rule 23(d)(4) provides that "the court may make appropriate orders . . . requiring that the

2   pleadings be amended to eliminate therefrom allegations as to representation of absent persons,

3   and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(4).

4       **B.**     **Motion For More Definite Statement**

5       Under Federal Rule of Civil Procedure 12(e), the Court has broad discretion to order the

6   plaintiff to provide a more definite statement where the complaint is "so vague or ambiguous"

7   that the defendants cannot reasonably be required to frame a responsive pleading.  Fed. R. Civ. P.

8   12(e).  Trial courts have broad discretion to require amendment of the complaint to provide

9   additional detail.  *Warth v. Seldin*, 422 U.S. 490, 501-502 (1975).  An order for a more definite

10  statement serves the Court's and the parties' interests because, "[u]nless cases are pled clearly and

11  precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes

12  unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer

13  justice."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir.

14  1996) (finding trial court should have instructed plaintiff's counsel to provide more definite

15  statement).

16  **IV.    ARGUMENT**

17      **A.**     **Plaintiff's Purported Class  Definitions At Paragraphs 11 Through 16 And**
                   **Paragraph 38 And All Class Allegations Of The First Amended Complaint**
18                 **Should Be Stricken As Vague; Or, In The Alternative, Plaintiff Should Be**
                   **Ordered to Provide A More Definite Statement**
19

20      The Court should strike all of Plaintiff's class definitions at Paragraphs 11 through 16 and

21  Paragraph 38 and all class allegations because the classes asserted are imprecise, vague and

22  ambiguous.  A class action complaint must set forth facts sufficient to show the requisite

23  ascertainable class.  The class definition must be "precise, objective and presently ascertainable."

24  *O'Connor v. Boeing N.A , Inc.*, 197 F.R.D. 404, 416 (C.D. Cal. 2000)[1] (quoting Manual for

25  Complex Litigation Third § 30.14 at 217 (1995)); *see also In re Tetracycline*, 107 F.R.D. 719,

26  728 (W.D. Mo. 1985) (proposed class must not be amorphous, vague or indeterminate).  The

27  _____

28  [1]  It is Plaintiffs' burden to establish that all the requirements for class action adjudication are
    met.  *Senter v.  GM Corp.*, 532 F.2d 511, 522 (6th Cir. 1976).

1   class definition must be sufficiently definite so that it is administratively feasible for the court to

2   determine whether a particular individual is a member. *Aiken v. Miller*, 442 F. Supp. 628, 658

3   (E.D. Cal. 1977); *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D. Nev. 1985). Thus, for

4   example, a definition is insufficient if it would require the court "to pass on the merits of the

5   claim at the class certification stage in order to tell who was included in the class." *Id.*; *Eisen v.*

6   *Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Moore v. Hughes Helicopters, Inc*., 708 F.2d

7   475, 480 (9th Cir. 1983).

8       Here, Plaintiff offers confusing, vague and indefinite class definitions because they do not

9   identify any particular job titles in existence at i365 or Seagate so Defendants are left to guess at

10  the specific nature of the proposed class. When Plaintiff filed her original Complaint, she

11  asserted class allegations of a class of "Vault Administrators." When filing the First Amended

12  Complaint, however, the title in the class allegation changed from "Vault Administrators" to

13  "I365 Administrators." *See* Complaint, ¶ 12; *see also* FAC, ¶ 12. The job title "I365

14  Administrator," however, does not exist at either i365 or Seagate.

15      Additionally, Plaintiff's definitions will require the Court and the Parties to make a fact-

16  intensive inquiry and a legal determination into the primary job duties of each individual to

17  determine the scope of each of the classes. Here, each of Plaintiff's alleged class definitions

18  incorporates Plaintiff's definition of the term "I365 Administrators," which consists of a fact-

19  intensive determination of the primary job duties of Defendants' alleged employees during the

20  relevant period. *See* FAC, ¶¶ 13-16 and 38. In order to determine whether an individual is in the

21  purported Rule 23 class, the Court would need to determine whether each employee "primarily

22  engaged in the design, installation, or configuration of computer networks; and . . . was primarily

23  engaged in the backup and recovery of computer data[]" under plaintiff's definition of "I365

24  Administrators." FAC, ¶ 12. This definition is vague and it should be stricken. *See* Fed. R. Civ.

25  P. 12(f).

26      Plaintiff's purported PAGA class confuses matters even further by including an expanded

27  number of apparently undefined job titles in addition to "I365 Administrators," specifically

28  "Senior I365 Administrators," "Disaster Recovery Network Engineers," "I365 Managers,"

1    "Senior I365 Managers," "Software Engineers," "Senior Software Engineers," "Great Plains

2    Applications Administrators," "Service Operation Engineers," "Market Intelligence Interns,"

3    "Sales Engineers," "Installation Engineers," and "Technical Support Engineers." *See* FAC, ¶ 38.

4    While Plaintiff claims these titles were taken from the i365 website, many of these titles simply

5    do not exist at i365 or Seagate.   And Plaintiff only compounds the confusion by stating that the

6    PAGA class includes "any person, regardless of job title, who was primarily engaged in the

7    design, installation, or configuration of computer networks, any person, regardless of job title,

8    who was primarily engaged in the writing or testing of computer software, and any person,

9    regardless of job title who was primarily engaged in the backup and recovery of computer data."

10   *Id.*  Thus, again, to determine whether one is an "aggrieved employee" for purposes of Plaintiffs'

11   PAGA claim, the court and the parties will be required to ascertain what each employee at i365

12   and Seagate are primarily engaged in.   Therefore, Plaintiff's purported PAGA class and class

13   allegations should also be stricken as vague.  *See* Fed. R. Civ. P. 12(f).

14         In the alternative, for the above reasons, pursuant to Federal Rule of Civil Procedure

15   12(e), the Court should order Plaintiff to provide a more definite statement regarding Plaintiff's

16   purported class definitions at Paragraphs 11 through 16 and 38 and Plaintiff's class allegations

17   because they are so vague and ambiguous that Defendants cannot reasonably prepare a responsive

18   pleading.  *See* Fed. R. Civ. P. 12(e).

19         **B.     <u>Plaintiff's Expanded Purported PAGA Class Allegations Should Be Stricken
             Because Plaintiff Fails To Satisfy The Requirements Of Federal Rule of Civil</u>**
20           **<u>Procedure 23</u>**

21         Plaintiff should be precluded from bringing her sixth and seventh claims for civil penalties

22   under PAGA in a "representative" capacity on behalf of unnamed former and current employees

23   as defined in Paragraph 38 because Plaintiff fails to satisfy the requirements of Rule 23.  *See*

24   FAC, ¶¶ 32-38 and 96-110.

25         **1.     Rule 23 Governs Plaintiff's Procedural Right to Proceed on Behalf of
             Unnamed Plaintiffs**
26

27         Under Rule 23, "[o]ne or more members of a class may sue . . .  as ***representative parties***

28   on behalf of all members ***only if***" he/she complies with the requirements of class certification.

1   Fed. R. Civ. P. 23 (*emphasis added*).  "The class-action device was designed as an 'exception to

2   the usual rule that litigation is conduced by and on behalf of the individual named parties only.'"

3   *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (*citing to Califano

4   v. Yamasaki*, 442 U.S. 682, 700-01 (1979))*.*  Absent compliance with the certification procedures

5   set forth in Rule 23 and a finding that the claims are proper for class treatment, this Court lacks

6   jurisdiction over the claims of unnamed plaintiffs.

7        When the certification requirements of Rule 23 are satisfied, "'the class-action device

8   saves the resources of both the courts and the parties by permitting an issue potentially affecting

9   every [class member] to be litigated in an economical fashion under Rule 23.'"  *Id.*   Certification

10  of a suit as a class action has important consequences as the unnamed class members are bound

11  by the Court's judgment whether it is favorable to the unnamed class members or not.   Fed. R.

12  Civ. P. 23(c)(3), Advisory Committee Notes (as revised 23(c)(3) excludes one-way intervention).

13  Rule 23 also provides safeguards against potential abuses of unrepresented parties' rights.  *See*

14  Fed. R. Civ. P. 23.  Class action procedures insure protection of the rights of absent parties in

15  accordance with the requirements of due process.  *See Hansberry v. Lee*, 311 U.S. 32, 43 (1940).

16   **2.     Pursuing Claims On Behalf Of Unnamed Parties Is A Procedural
            Right Governed By Rule 23**

17

18       Where the court exercises federal question jurisdiction over a federal claim and

19  supplemental jurisdiction over associated state law claims, a federal court must apply the

20  substantive law of the state in which it sits as to state law claims and federal rules with respect to

21  procedural matters.  *See Lora v. Providian Bancorp Servs.*, No. EP-05-CA-045-DB, 2005 U.S.

22  Dist. LEXIS 14795, *7 (W.D. Tex. July 22, 2005)*; see also Rissetto v. Plumbers & Steamfitters

23  Local 343*, 94 F.3d 597, 602 (9th Cir. 1996) (stating that the Rules of Decision Act, 28 U.S.C. §

24  1652, requires federal courts to apply state substantive law as to state law claims and federal rules

25  with respect to procedural matters).  Where the choice is between a state procedural rule and that

26  which involves the Federal Rules of Civil Procedure, the Enabling Act, 28 U.S.C. § 2072,

27  controls, and the court must apply the Federal Rules of Civil Procedure so long as the Rule does

28  not abridge, enlarge or modify any substantive right.  *Mace v. Van Ru Credit Corp*., 109 F.3d

- 8 -

1    338, 346 (7th Cir. 1997) (*citing to Hanna v. Plumer*, 380 U.S. 460 (1965)).

2          PAGA creates substantive rights, permitting employees to recover civil penalties where

3    such penalties had previously been recoverable only by the California Labor and Workforce

4    Development Agency. *See* CAL. LAB. CODE § 2699. The claim may be asserted on behalf of the

5    current or former employee herself "and other current or former employees." However, the

6    statute does not specify *how* such a claim may be brought. That is a matter of procedure,

7    governed by the federal rules.

8          The right to represent a class is a procedural right, not a substantive right. *United States*

9    *Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); *Diaz-Ramos v. Hyundai Motor Co.*, 504 F.3d

10    12, 16 (1st Cir. 2007) ("procedural class action provisions neither create substantive rights nor

11    give rise to an independent cause of action); *Blaz v. Belfar*, 368 F.3d 504 (5th Cir. 2004). In a

12    class action, "[t]he substantive right is the right to sue. The right to bring a class action, the

13    statute of limitations, treble damages and venue are all matters of procedure that do not implicate

14    the right to sue but how you go about it." *Thorogood v. Sears, Roebuck and Co.,* No. 06 C 1999,

15    2007 U.S. Dist. LEXIS 81035, *7 (N.D. Ill. November 1, 2007) (*citing Mace v. Van Ru Credit*

16    *Corp.*, 109 F.3d 338, 346 (7th Cir. 1997. Accordingly, Rule 23 governs procedurally how

17    Plaintiff may maintain claims on behalf of other aggrieved employees.

18
        **3.**       **Unless The Claims Are Certified, Plaintiff Lacks Article III Standing**
19                   **To Assert Rights Of Unnamed Current And Former Employees**

20          To interpret PAGA as a blanket shortcut around Rule 23 would not only violate the letter

21    and intent of the Federal Rules of Civil Procedure, it would create an unbounded basis to sue on

22    behalf of others. Under Article III of the United States Constitution, standing in federal court is

23    limited to those plaintiffs who can allege an injury in fact that is: (1) actual and imminent; and (2)

24    concrete and particularized. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

25    "Prudential limitations require that parties assert their own rights rather than rely on the rights or

26    interests of third parties. [citation]. Federal courts have traditionally been reluctant to grant third

27    party standing. [citation]." *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir.

28    1987) (plaintiff's complaint dismissed based upon prudential considerations of third-party

1    standing).

2         "'In determining jurisdiction, district courts of the United States must look to the sources

3    of their power, Article III of the United Stated Constitution and Congressional statutory grants of

4    jurisdiction, not to the acts of state legislatures.  However extensive their power to create and

5    define substantive rights, the states have no power directly to enlarge or contract federal

6    jurisdiction.'"  *See Fiedler v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983) (quoting *Duchek v. Jacobi*,

7    646 F.2d 415, 419 (9th Cir. 1981) (rejecting plaintiff's assertion that the district court had

8    jurisdiction because he was suing as a private attorney general on behalf of Hawaii citizens as

9    authorized by state law; while state law was intended to remove barriers to standing to sue, it

10   cannot enlarge subject matter jurisdiction of the federal courts)).  "The Rule 23 class-action

11   device was designed to allow an exception to the usual rule that litigation is conducted by and

12   only on behalf of individual named parties."  *Califano*, 442 U.S. at 700-01.

13        Without compliance with certification requirements under Rule 23, this Court lacks

14   jurisdiction to adjudicate Plaintiff's representative claims.  *Id.*  ("Where the district has

15   jurisdiction over the claim of each member of the class, Rule 23 provides a procedure by which

16   the court may exercise that jurisdiction over the various individual claims in a single

17   proceeding."); *see Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (by certifying the class, the unnamed

18   persons described in the certification acquire a legal status); *La Duke v. Nelson*, 762 F.2d 1318,

19   1325 (9th Cir. 1985) (for standing purposes, the court must focus on the *standing* of the class to

20   seek relief).[2]

21        In *Wilson v. Norbreck, LLC*, No. CIV-S-04-0690 DFL JFM, 2005 U.S. Dist. LEXIS

22   33214 (E.D. Cal. Dec. 14, 2005), the Eastern District Court of California considered third party

23   standing in a claim analogous to this one.  In *Wilson*, the plaintiff attempted to use California's

24   Unfair Competition Laws ("UCL"), which at the time authorized claims on behalf of the general

25

26   _____

27   [2] One California appellate court held that class certification is not required to obtain civil
     penalties on behalf of other aggrieved individuals under PAGA, but that opinion has since been
     superseded by grant of review by the California Supreme Court.  *See Arias v. Superior Court,* 153
28   Cal. App. 4th 777, 786-788 (2007), *review granted*, *depublished by*, 169 P. 3d 882 (Cal. 2007).

                                              - 10 -

1   public, as a means to sue without complying with Rule 23.[3]  *Id*. at *8.  The Court held that

2   prudential limitations on Article III standing prevented a plaintiff from bringing a representative

3   action except in certain well-defined cases such as class actions under Rule 23 and *parens patriae*

4   actions instituted by the States.  *Id*. at *8-9.  The Court found that the UCL did not create an

5   exception to the rule and dismissed plaintiffs' representative claims for want of standing.  *Id*. at

6   *9.

7          Like the court in *Wilson*, this Court should find PAGA is no exception to the prudential

8   limitations of Article III and that plaintiff lacks standing to assert representative claims absent

9   class certification.  *See Celador v. Int'l LTD*¸ 347 F. Supp. 2d 846 (C.D. Cal. 2004) (the parties

10  conceded and the Court dismissed plaintiffs' claim on behalf of "the general public" for lack of

11  standing).

                    **4.      Allowing Plaintiff To Proceed On Behalf Of Unnamed Parties Without
12                            Compliance With Rule 23 Would Deny Due Process Rights Both To
13                            The Defendants And Unnamed Parties**

14         Although the California Supreme Court has yet to be heard in *Arias,* the Court has already

15  clearly identified the danger inherent in permitting a representative action unconstrained by the

16  procedural safeguards inherent in class actions.  In *Fireside Bank v. Superior Court*, 40 Cal. 4th

17  1069 (2007), the Court considered whether a court could certify a class at the same time it ruled

18  on the merits of the case.  The defendant appealed, arguing that by ruling on the dispositive

19  motion before notice had been given to the class, the court had impermissibly created "one-way

20  intervention," by which only the defendant would be bound by an adverse ruling.  *Id.* at 1077.

21  The Court granted review and reversed the decision of the court of appeal, which had ruled that

22  the trial court had broad discretion to issue merits rulings before ruling on class certification.  *Id.*

23         The Court in *Fireside Bank* further noted the differences between state and federal

24  procedure with respect to the certification of class actions.

25  _____

    [3] The UCL was amended in 2004 to require compliance with California class certification
26  procedures. Prior to 2004, plaintiffs were able to pursue uncertified representative claims on
    behalf of the general public.  The district court's decisions dealing with uncertified representative
27  UCL claims are analogous to the facts of this case in that the Plaintiff in this matter contends she
    is able to proceed on her uncertified PAGA claims in the same manner that plaintiffs were able to
28  pursue their uncertified UCL claims on behalf of the general public prior to 2004.

1
2
3
4
5

> In the federal courts, this problem provisionally was solved by amending Federal Rules of Civil Procedure rule 23.  In 1966, the rule was rewritten to end one-way intervention by requiring that class issues be resolved "[a]s soon as practicable after the commencement of an action brought as a class action.". . . Therefore, [parties in a class action] are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse.

6
7
8

*Fireside Bank* at 1078-79.  Noting that "the federal system dealt with the problem of one-way intervention by amending its rules of procedure," the Court noted that California courts had developed and applied a judicial rule against "one-way" intervention.  *Id.*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Allowing Plaintiff's claims to proceed without complying with Rule 23 requirements would result in precisely the kind of "one-way intervention" prohibited in *Fireside Bank*, and would deny Defendants due process.  Any judgments (whether favorable or unfavorable) could never serve as res judicata since the unnamed employees will never be in privity to the parties to this action where the class was never certified.  *See Waisbein v. UBS Fin. Services, Inc.*, No. C-07-02328 MMC, 2007 U.S. LEXIS 62723, at *8-9 (N.D. Cal. August 15, 2007) (for a claim to be barred under res judicata, privity must exist between the parties in both actions).  Without res judicata, Defendants would be subject to "one-way intervention" whereby Plaintiffs may successfully recover on behalf of unnamed employees but if Plaintiffs are not successful, the unnamed employees would not be bound by the adverse result.  *See Roberts v. Western Airlines*, 425 F.Supp. 416 (N.D. Cal. 1976) (Rule 23 was amended to eliminate the practice where employees could be bound when a judgment was advantageous and to be free when it was unfavorable *citing to* Advisory Committee Note to Fed. R. Civ. R. 23, 39 F.R.D. 98, 106 (1966)); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3rd Cir. 1974) (Rule 23 eliminates the unfairness of one-way intervention as all class members are bound by the res judicata effect of the judgment); *Amati v. City of Woodstock*, 176 F.2d 952, 957 (Ill. 1999) (Rule 23(c) prohibits potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment); *Home Sav. & Loan Assn. v. Sup. Ct.,* 42 Cal. App. 3d 1006, 1011 (1974) (absent notification, no member of the class need be bound by the result of the litigation).

1    Liability for Plaintiff's class claims can be determined only through a person-by-person

2    factual and legal analysis.  The Defendants have a due process right to see the evidence as to each

3    person, and to defend itself by presenting evidence as to each person.  *See Richards v. Jefferson*

4    *County, Alabama*, 517 U.S. 793, 797 n. 4 (1996) ("The opportunity to be heard is an essential

5    requisite of due process of law in judicial proceedings").  These due process concerns have been

6    noted by other courts dealing with other types of uncertified "representative" claims.  *See*

7    *Nachum v. Allstate Ins. Co.*, CV 97-4493 ABC (BQRx), 1997 U.S. Dist. LEXIS 12670, at *13

8    (C.D. Cal. July 21, 1997) (allowing plaintiffs to proceed on behalf of unnamed parties under the

9    UCL would be inefficient, raise due process concerns, and essentially require litigation of each

10   individual claim of unidentified parties); *see also Marshall v. Standards Insur. Co.*, 214 F. Supp.

11   2d 1062, 1071 (C.D. Cal. 2000) (representative action is not preferable since maintenance as class

12   action best assures interests of unnamed individuals are adequately represented); *Bronco Wine*

13   *Co. v. Frank A. Logoluso Farms,* 214 Cal. App. 3d 699, 717 (1989) (recognizing "serious

14   fundamental due process considerations" in rendering a judgment for or against a nonparty to a

15   lawsuit where the nonparty has not been given notice of the proceedings or an opportunity to be

16   heard) (*citing Lambert v. California*, 355 U.S. 225, 228 (1957)); *Rosenbluth International, Inc. v.*

17   *Superior Court*, 101 Cal. App. 4th 1073, 1079 ("a representative action to which the alleged

18   victims are not parties raise serious fundamental due process considerations").

19   If Defendants prevail on the claims, each and every unsuccessful unnamed plaintiff would

20   still be free to pursue his/her claims against Defendants despite the fact that the uncertified

21   representative claims were previously adjudicated in favor of Defendants.  Accordingly,

22   Defendants would be denied due process if the merits of Plaintiff's PAGA claims are decided

23   prior to compliance with Rule 23.  Fed. R. Civ. P. 23(c)(3), Advisory Committee Notes (under

24   subdivision (c)(3), one-way intervention is excluded); *Fireside*, 40 Cal. 4th at 1083 (to prevent

25   one-way intervention, courts must ensure affected parties are bound before merits are decided).

26   Similarly, unnamed plaintiffs' due process rights would also be denied absent class

27   certification.  *See Hansberry,* 311 U.S. at 42-43 (Under the Constitution, judgment rendered in a

28   class suit is res judicata as to members who are not formal parties in appropriate case.  The

1    Fourteenth amendment does not require states adopt rules adopted by the federal court but there is

2    a failure of due process where the procedure adopted does not fairly insure protection of interests

3    of the absent parties who are bound by it).  The certification procedure of Rule 23 insures the

4    protection of the interests of the absent plaintiffs by requiring a Court to affirmatively determine

5    that the named plaintiff is an adequate representative, by requiring notice of the action be

6    provided to the absent plaintiffs, and an opportunity either to opt-in or opt-out of the action,

7    among other things.  Disposing of Rule 23 certification requirements is a denial of due process to

8    the absent parties in its entirety as there is no procedure in place, much less an adequate

9    procedure that fairly insures the protection of the interests of absent parties.

10          **5.    Even If The Court Applies State Law, The Court Should Not Allow
               This Action To Proceed As A Representative Action**

11

12                 **a.    PAGA Is Not Intended To Create A Right To A Class Action
                      Immune From The Requirements Of Class Certification**

13          Even if the Court were to determine that allowing this case to proceed as a representative

14   action did not violate federal principles, there is no "automatic right" to class treatment under

15   PAGA.  Because this issue has not yet been resolved by the California Supreme Court, this Court

16   must apply the law as it believes that court would do under the circumstances.  *Summit*

17   *Partnership v. Turner Broadcasting System, Inc*., 135 F.3d 658, 663 (9th Cir. 1998).

18          PAGA was adopted to allow aggrieved employees to act as private attorneys general to

19   seek civil penalties for Labor Code violations that previously could only be assessed by state

20   agencies.  *Dunlap v. Sup. Ct. (Bank of America*), 142 Cal. App. 4th 330, 336 (2006).   The Act

21   permits an "aggrieved employee" to assert claims for civil penalties on behalf "of himself or

22   herself and other current or former employees."  Lab. Code § 2699(a).

23          The Legislature did not, however, intend for PAGA claims on behalf of other former and

24   current employees to be immune from the requirements of class certification.  While the express

25   language of PAGA is silent as to how an aggrieved employee sues on behalf of other harmed

26   employees, the Legislative history of SB 796, which became PAGA, refutes the notion that the

27   Act countenanced an uncertified "representative" action.  Proponents of SB 796 assured those

28   opposed to the bill that it was drafted to avoid typical abuses of private attorneys general actions

- 14 -

1    (such as representative actions of the UCL).  *See* Defendants' Request for Judicial Notice, filed

2    concurrently herewith ("Defendants' RJN"), Exh. A (Senate Judiciary Committee report of SB

3    796 (April 29, 2003) at 6-7.  To address these concerns, sponsors of the bill explained that the

4    action would only be permitted on behalf of those *actually harmed*:

5
            A private action under this bill would be brought by the employee
6            "on behalf of himself or herself or others" – that is, fellow
            employees *also harmed by the alleged violation* – instead of "on
7            behalf of the general public," as private suits are brought under the
            UCL.
8
            This would dispense with the issue of res judicata ("finality of the
9            judgment") that is the subject of some criticism of private UCL
            actions.  An action on behalf of other aggrieved employees would
10           be final as to those plaintiffs, and an employer would not have to be
            concerned with some future suits on the same issues by someone
11           else "on behalf of the general public."

12   *Id.* at 7-8 (*emphasis added*)

13         To allay opponents' concerns with the res judicata effect of private attorney general

14   actions, the bill's author amended the bill to address only situations where the actual identities of

15   "aggrieved parties" became known during an action: the Act was amended to read: "in a civil

16   action filed on behalf of himself or herself or ~~others~~ other current or former employees for whom

17   evidence of a violation was developed during the trial or at settlement of the action."  *Id.* at 9.

18   The bill's author again amended the language to clarify the intent of the bill to read, as codified,

19   "in a civil action on behalf of himself or herself and other current or former employees ~~whom~~

20   ~~evidence of a violation was developed during the trial or at settlement of the action~~ against whom

21   one or more of the alleged violations was committed."  Defendants' RJN, Exh. B (Senate

22   Judiciary Committee report of SB 796 (June 26, 2003)) at 9.  By limiting the right to sue only on

23   behalf of those "aggrieved" employees, the sponsors of the bill affirmed that "[b]ecause there is

24   no provision in the bill allowing for private prosecution on behalf of the general public, there is

25   no issue regarding the lack of finality of judgments against employers, as there has been with

26   respect to private UCL actions."  *Id.* at 6.

27         It would be contrary to this Legislative intent to read PAGA as broadly permitting a

28   plaintiff to proceed to trial on behalf of an uncertified class of persons.  The Act clearly

- 15 -

1   contemplates that the Courts will apply the rules of due process (in this court Rule 23) to ensure

2   that any decision on the merits will provide fairness and due process, and to prevent "one-way

3   intervention."  Without certification, there would be no basis to determine which parties were

4   ones "against whom .. the violations were committed" until the end of the case.  This is the

5   precise result that led PAGA's author to amend the act three times.

6           **b.      The Court Should Exercise Its Discretion And Hold That
                Plaintiff's PAGA Claims Are Not Suitable for Representative
7               Treatment**

8           Cases in which courts have even considered the right of a private party to proceed in a

9   representative capacity have arisen under principles of equitable relief.  *See Marshall v. Standard*

10  *Ins. Co.*, 214 F. Supp. 2d 1062 (C.D. Cal. 2000); *Barnett v. Washington Mutual Bank*, 2004 U.S.

11  Dist. LEXIS 18491 (N.D. Cal.); *Kraus v. Trinity Management Serv.,* 23 Cal. 4th 116, 138 (2000);

12  *Bronco Wine Co. v. Frank A. Logoluso Farms,* 214 Cal. App. 3d 699, 721 (1989).  This case does

13  not even meet this standard since the right to collect a penalty is generally not an equitable

14  remedy.  *See Feltner v. Columbia Pictures Tv*, 523 U.S. 340, 352 (1998); *see also Tull v. United*

15  *States*, 481 U.S. 412, 422 (1987) ("A civil penalty was a type of remedy at common law that

16  could only be enforced in courts of law.").  However, even if this were not so, and Plaintiff were

17  proceeding under equity, the Court should not permit this case of representative claim.  As noted

18  above, PAGA penalties are only awarded where individuals prove that they were actually harmed.

19  Thus, even assuming that the Court were to conclude that a PAGA "representative" claim would

20  be possible absent class certification, the Court should not permit this action to proceed because it

21  would be unmanageable.  *See Marshall*, 214 F. Supp. 2d at 1074 (C.D. Cal. 2000) (dismissing

22  plaintiff's representative claims seeking restitution but allowing plaintiff to maintain

23  representative action seeking injunctive relief).  Under state law, the Court has discretion to

24  decline to allow this action to proceed as a representative action.  *Kraus v. Trinity Management*

25  *Serv.,* 23 Cal. 4th 116, 138 (2000); *Bronco Wine Co. v. Frank A. Logoluso Farms,* 214 Cal. App.

26  3d 699, 721 (1989).

27          In *Marshall*, *supra,* the federal court addressed issues analogous to the issues in this case.[4]

28  ────────────────────
    [4] It appears the parties did not raise nor did the court undergo an *Erie* doctrine analysis.  Instead,

The issue before the court was whether plaintiff should be allowed to proceed on his uncertified representative claims on behalf of the general public under California's UCL.  214 F. Supp. 2d at 1067.  In refusing to permit the plaintiff to proceed in a representative capacity, the Court applied the factors set forth in *Bronco Wine co. v. Frank A. Logoluso Farms*, 214 Cal. App. 3d 699, 720-21 (1989):

> (1)   Whether determination of the unfair business practice at issue requires resolution of complex factual issues;
>
> (2)   Whether determining the amount of restitution would require something other than a straightforward calculation;
>
> (3)   Whether the amount of restitution that might be awarded to non-parties is nominal;
>
> (4)   Whether the amount of restitution to which each non-party would be entitled is identical; and
>
> (5)   Whether entering judgment for or against non-parties would pose insurmountable control and management problems.

*Id.* at 1069.

Applying these factors, the *Marshall* court found that proof of the alleged unfair business practices – improper processing and termination of disability benefit claims – would require examination of hundreds, if not thousands of claims files.  *Id.* at 1070.  It would also require evaluation of numerous factors as to why benefits were terminated and individualized calculation of the amount of restitution – which was not a simple mathematical calculation.  *Id.*  Claims would need to be re-examined to determine whether, based upon the court's interpretation of terminology set forth in the policy, claimants were entitled to benefits beyond 24 months.  If a claimant was entitled to benefits beyond 24 months, questions arise as to the period of time for which benefits were due.  This process would not only be complicated but different for each insured.  *Id.* at 1070-71.

Moreover, the amount of restitution would not be nominal as it would involve claims for

the court discussed the type of claims available under California Business and Professions Code § 17200 *et seq.*

1    months if not years of disability benefits.  The court further noted that substantial rights of

2    individuals who were not parties to the action and not subject to the court's jurisdiction would be

3    affected.  *Id.* at 1071.  Based upon its analysis of these factors, the *Marshall* court ultimately

4    determined that the action should not proceed as a representative action.  It found that

5    maintenance of the suit as a class action was a superior method as it would best assure that the

6    interests of the potentially affected potential class members are adequately represented.  *Id.*

7         The court in *Barnett v. Washington Mutual Bank*, C 03-00753 CRB, 2004 U.S. Dist.

8    LEXIS 18491 (N.D. Cal. September 9, 2004), reached a similar conclusion.  There, the plaintiff

9    attempted to sue for unpaid overtime in a misclassification case and asserted that class action

10   requirements were not mandated under California's UCL.  The *Barnett* court also applied the

11   *Bronco* factors and struck plaintiffs' UCL claims to the extent they sought to proceed as a

12   representative action.  While the court assumed that plaintiffs generally could proceed with such

13   claims in a representative action, it found that such an action was not appropriate under the

14   *Bronco* factors "given the large amount of restitution per loan officer sought by plaintiffs and the

15   nature of plaintiffs' allegations, namely that the actual numbers of hours worked by each loan

16   officer were not recorded and would vary by individual."  *Id.* at *13.

17        Like the *Marshall and Barnett* courts, this Court should find compliance with class action

18   procedures, including certification, is a superior method of adjudicating Plaintiffs' representative

19   PAGA claims.[5]  Similar to *Marshall*, proof that each former and current employee is entitled to

20   civil penalties requires a complicated evaluation and would be different for each individual

21   employee.  The court would need to evaluate each employees' underlying Labor Code violation

22   claims, such as whether each is entitled to overtime, whether proper pay stubs were provided, and

23   whether individuals are entitled to waiting time penalties, among other issues.

24        After presenting proof of whether the underlying alleged Labor Code violation occurred,

25   the Court would then need to determine whether the violation gives rise to a PAGA penalty since

26   not all violations give rise to penalties recoverable under PAGA.  *See Dunlap v. Sup. Ct.*, 142 Cal.

27   _____

     [5] Defendants expressly reserve and do not waive their right to assert that this Court should deny
28   certification of Plaintiffs' PAGA claims.

1   App. 4th 330, 339 (2006).  After determining which employees and which penalties applied, the

2   Court would then need to determine for which time period or pay period each employee would be

3   entitled to a penalty.  Indeed, this assessment varies employee by employee.  Most importantly,

4   like the plaintiff in *Marshall*, allowing Plaintiffs to pursue their uncertified representative claims

5   would implicate substantial rights of individuals who are not parties to this action.  As discussed

6   above, the court lacks jurisdiction over these individuals.  For these reasons, this Court should

7   dismiss Plaintiffs' uncertified representative claims like the court did in *Marshall.*

8        As in *Marshall, Barnett,* and *Bronco*, this Court should decline to permit Plaintiff to

9   pursue uncertified representative claims.  The determination of whether each aggrieved employee

10  was exempt, and thus entitled to overtime under California and federal law requires resolution of

11  complex factual issues.  The determination of whether any civil penalties should be awarded is

12  not subject to a straightforward calculation but will require individual inquiry as to the pay period

13  at issue and the type(s) of penalties at issue.  Indeed, the potential combination of penalties an

14  employee may be entitled to are numerous and will vary by employee. Because of the individual

15  inquiry required, the potential penalty awarded to each non-party varies and will not be identical.

16  Lastly, entering judgment for or against non-parties would pose grave management problems as

17  there would be no res judicata effect without certification of such claims.  Thus, this Court should

18  exercise its discretion and find the uncertified representative claims presented by Plaintiff are not

19  appropriate for non-class treatment.

20        C.    **Plaintiff's Joint Employer Allegations At Paragraphs 7 And 8 And As**
21              **Incorporated In The First Amended Complaint Should Be Stricken As Overly**
              **Cursory For Failure To Plead Facts Sufficient To Allege Joint Employer**
22              **Status**

23        Without alleging any facts in support, Plaintiff simply alleges that she "was jointly

24  employed by Defendants from April 11, 2005 through September 19, 2008."  *See* FAC, ¶¶ 7-8.

25  These allegations and as incorporated in the First Amended Complaint should be stricken as

26  overly cursory for failure to plead facts sufficient to allege joint employer status under California

27  and federal law.  Nor could Plaintiff allege such facts because Plaintiff was employed by i365 and

28  never Seagate.  While Plaintiff makes the conclusory allegation that she was jointly employed by

1  Defendants, she must plead facts demonstrating the circumstances of the employment

2  relationship.

3           **1.**       **Plaintiff Fails To Allege Facts Establishing That i365 And Seagate**
                            **Were Joint Employers Under California Law**

4

5        To establish Seagate's liability on any of plaintiff's seven claims, Plaintiff must do more

6  than make the conclusory allegation that Plaintiff "was jointly employed by Defendants from

7  April 11, 2005 through September 19, 2008."  FAC, ¶ 8.  "[P]laintiff's obligation to provide the

8  'grounds' of his 'entitlement to relief' requires more than labels and conclusions."  *Bell Atlantic*

9  *Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1959 (2007) (citations and brackets omitted).

10  Under California law, the issue of control is essential to a finding of dual, or joint, employment.

11  *See Singh v. 7-Eleven, Inc.*, No. C-05-04534 RMW, 2007 U.S. Dist. LEXIS 16677, at *20 (N.D.

12  Cal. Mar. 8, 2007) ("California courts have consistently recognized that the principle test for

13  determining employment relationships is the right of control over the manner or means of

14  accomplishing the result desired.") (emphasis added) (citations omitted).  Joint employment arises

15  in California only "where two or more employers exert significant control over the same

16  employees -- where from the evidence it can be shown that they share or co-determine those

17  matters governing essential terms and conditions of employment."  *United Pub. Employees v.*

18  *Pub. Employment Relations Bd.*, 213 Cal. App. 3d 1119, 1128 (1989) (emphases added) (citation

19  omitted); *see also In-Home Supportive Servs. v. Workers' Comp. Appeals Bd.*, 152 Cal. App. 3d

20  720, 732 (1984) ("Joint employment occurs when two or more persons engage the services of an

21  employee in an enterprise in which the employee is subject to the control of both.") (emphasis

22  added).  Dual employment has been found where the joint employer's "control" consisted of

23  making "daily management decisions, including directing the workers and helping select them."

24  *Michael Hat Farming Co. v. Agric. Labor Relations Bd.*, 4 Cal. App. 4th 1037, 1044 (1992)

25  (emphasis added).  Determining whether an employer-employee relationship exists requires an

26  examination of the totality of the circumstances; "the presence of any one individual factor is not

27  dispositive."  *See Vernon v. State of California*, 116 Cal. App. 4th 114, 124-25 (2004) (there is

28  "no magic formula" for determining joint employer relationship;  rather, "the court must analyze

- 20 -

1   'myriad facts surrounding the employment relationship in question' ... No one factor is decisive.")

2   (citations omitted).

3        Plaintiff simply has alleged no facts establishing that Seagate and i365 shared control over

4   the same employees, including Plaintiff, and thus Plaintiff has failed to establish that Seagate and

5   i365 were joint employers under California law.  To the contrary, Plaintiff factually alleges that

6   Seagate and i365 are distinct corporate entities, namely that Seagate is a Delaware limited

7   liability company and i365 is a Delaware corporation.  *See* FAC ¶¶ 9-10.  Therefore, Plaintiff

8   fails to establish that Defendants were joint employers for purposes of Plaintiff's claims under

9   California law.

10                    **2.      Plaintiff Also Fails To Allege Facts Establishing That i365 And Seagate
                             Were Joint Employers Under Federal Law**

11

12       Nor has Plaintiff alleged facts establishing that Defendants were joint employers under

13  federal law for purposes of Plaintiff's FLSA claims.  The Ninth Circuit Court of Appeals applies

14  an economic reality test to determine if a joint employment relationship exists under the FLSA.

15  *See Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).    Under this test, "[a] court should

16  consider all those factors which are 'relevant to [the] particular situation' in evaluating the

17  'economic reality' of an alleged joint employment relationship under the FLSA."  *Torres-Lopez*,

18  111 F.3d at 639 (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470

19  (9th Cir. 1983)).  Courts consider following four factors: whether the alleged employer (1) had

20  the power to hire and fire the employees, (2) supervised and controlled employee work schedules

21  or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

22  employment records.  *Bonnette*, 704 F.2d at 1470; *see also Baird v. Kessler*, 172 F. Supp. 2d

23  1305 (E.D. Cal. 2001) (laying out four factors relevant to a determination of "employer" status).

24  However, "[t]he ultimate determination must be based 'upon the circumstances of the whole

25  activity.'"  *Bonnette*, 704 F.2d at 1470.  Plaintiff's First Amended Complaint fails to allege any

26  facts demonstrating the economic reality of the relationship between Seagate and i365, nor has

27  Plaintiff alleged facts regarding the above four factors.  Therefore, Plaintiff fails to establish that

28  i365 and Seagate are joint employers for purposes of Plaintiff's FLSA claims.

1

**D.** **Plaintiff's Allegations As To Seagate Should Be Stricken On the Basis That Plaintiff Lacks Standing To Sue Seagate Because Seagate Was Not Her Employer**

2

3          Plaintiff lacks standing to sue Seagate because she fails to establish that she worked for

4   Seagate. Nor could Plaintiff make such an allegation because Seagate was not Plaintiff's

5   employer. The standing requirement stemming from the "case or controversy" clause of Article

6   III requires federal courts to limit their exercise of jurisdiction to cases where a plaintiff can

7   demonstrate injury fairly traceable to the acts of a named defendant. U.S. Const., art. III, § 2;

8   *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("standing imports justiciability: whether the plaintiff

9   has made out a 'case or controversy' between himself and the defendant within the meaning of

10  Art. III. This is the threshold question in every federal case."). In order to satisfy constitutional

11  standing requirements, a "plaintiff must allege personal injury fairly traceable to the defendant's

12  allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*,

13  468 U.S. 737, 751 (1984) (emphasis added). Here, Plaintiff could not have suffered injury at the

14  hands of a company for whom she never worked, such as Seagate, and thus Plaintiff lacks

15  standing to sue Seagate. Moreover, lacking standing in her own right, plaintiff does not acquire

16  standing simply by framing her suit as a class action. To the contrary, the standing requirement

17  "focuses on the party seeking to get [her] complaint before a federal court and not on the issues

18  [she] wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). Here, as discussed

19  above, Plaintiff's complaint is void of any factual allegations establishing that she worked for

20  Seagate. *See* FAC, ¶ 8. Accordingly, Plaintiff lacks standing to assert either individual or class

21  claims against Seagate because Seagate was not Plaintiff's employer, and thus Plaintiff's claims

22  against Seagate should be stricken. *See* Fed. R. Civ. P. 12(f).

23         **E.** **"Doe" Defendants Are Impertinent And Must Be Stricken**

24         Plaintiff's allegations purporting to assert claims against "Does 1-10" as defendants in this

25  action must be stricken because use of "Doe" defendants is improper under the federal pleading

26  rules. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (use of "Doe" to identify

27  defendants improper except in special circumstances, such as where the identity of a specific

28  individual is not known at time of filing). Paragraphs 3, 6 and 7 allege facts related to such

1  fictitious defendants and are therefore irrelevant and should be stricken.  *See* FAC, ¶¶ 3, 6 and 7.

2  Moreover, Paragraphs 40, 54, 62, 69, 92, 97 and 104 all allege claims against Doe defendants,

3  and should also be stricken as impertinent.  *See* FAC, ¶¶ 40, 54, 62, 69, 92, 97 and 104.

4        The use of "Doe" defendants is not only improper generally, in this particular First

5  Amended Complaint the impropriety goes to the heart of one of the key issues in the case,

6  whether Seagate was Plaintiff's employer.  In this respect, Plaintiff's indiscriminate use of the

7  term "Defendants" to mean, at once, Seagate, i365 *and* all 10 "Doe" defendants further obfuscates

8  the claims.  As discussed above Plaintiff's class definitions imprecisely refer to the identity of the

9  defendants resulting in further uncertainty, as neither Seagate, i365 nor the Court will be able to

10  determine which of the 12 defendants are alleged to have been an employer, or which employees

11  are part of the class or sub-class definitions.  *See* FAC, *passim*.  Therefore, the alleged Doe

12  defendants should be stricken from the First Amended Complaint as impertinent.  *See* Fed. R.

13  Civ. P. 12(f).

14  
15       **F.**    **Allegations Seeking "Disgorgement" For Plaintiff's Section 17200 Claim Are Improper And Should Be Stricken**

16        At Paragraph 5 of Plaintiff's prayer for relief, Plaintiff seeks "disgorgement" for all

17  alleged unfair business practices against Plaintiff and the purported California Unfair Competition

18  Class.  *See* FAC, Prayer ¶ 5.  Plaintiff purports to seek such remedies through Plaintiff's

19  California Business and Professions Code § 17200 claim.  *See* FAC, ¶¶ 15, 91-95 and Prayer ¶ 5.

20  The <u>only</u> proper relief available through a section 17200 claim, however, is (a) injunctive and (b)

21  restitution.  "Disgorgement" of "profits realized" is plainly inconsistent with restitution (*i.e.*,

22  returning money or property to its rightful owner).  *See Cortez v. Purolator Air Filtration Prods.*,

23  23 Cal. 4th 163, 172 (2000) (in section 17200 case, trial court could not order disgorgement; "[i]t

24  may only order restitution to persons from whom money or property has been unfairly or

25  unlawfully obtained").  Such allegations, including those set forth in the Prayer, are impertinent

26  and should be stricken.  *See* Fed. R. Civ. P. 12(f); s*ee also* FAC, ¶¶ 15, 91-95 and Prayer ¶ 5.

27  **V.**    **CONCLUSION**

28        For the reasons discussed above, the Court should grant Defendants' motions to strike all

1   impertinent and immaterial allegations from the FAC, as detailed in the accompanying Notice of

2   Motion and Motion.  In the alternative, for the foregoing reasons, the Court should grant

3   Defendants' motion for a more definite statement regarding Plaintiff's purported class definitions

4   at Paragraphs 11 through 16 and 38 and Plaintiff's class allegations.

5   Dated: January 26, 2009            JULIE A. TOTTEN
                                   ALLISON E. PITIGOI

6                                    Orrick, Herrington & Sutcliffe LLP

7

8                                    _____/s/_____

9                                    JULIE A. TOTTEN
                                   Attorneys for Defendants

10                            Seagate Technology LLC (erroneously sued as
                             Seagate Technology, LLC) and i365 Inc.

11                               (erroneously sued as i365, Inc.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28